United States Court of Appeals,

Eleventh Circuit.

No. 94-4949

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Julis OBASOHAN, Defendant-Appellant.

Jan. 22, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-68-Cr-LCN), Lenore Carrero Nesbitt, Judge.

Before KRAVITCH, EDMONDSON and COX, Circuit Judges.

PER CURIAM:

Julis Obasohan was convicted of conspiracy to traffic in counterfeit access devices, in violation of 18 U.S.C. § 1029(b)(2), sentenced to 41 months imprisonment, and ordered to pay restitution. He appeals his sentence on the ground that the district court misapplied the Sentencing Guidelines. We AFFIRM.

I.

Obasohan was charged in a single count indictment with knowingly and willfully conspiring "to produce, use, and traffic in one or more counterfeit access devices." Evidence linked Obasohan and co-defendant Oromie Ogionwo to a series of "true name" credit card frauds, in which another person's name, date of birth, and social security number were used to obtain a credit card which was then used to make cash withdrawals and purchases. The evidence revealed Obasohan's involvement with thirty fraudulent credit card applications, eighteen of which were accepted and twelve of which

were rejected by banks. The government calculated the actual losses from the accepted applications as approximately $135,397 and the intended losses from the rejected applications as $90,264, resulting in an aggregate loss of $225,661.

Obasohan pleaded guilty to all charges in the indictment and was convicted of conspiracy to traffic in counterfeit access devices, in violation of 18 U.S.C. § 1029(b)(2). During his plea colloquy, he admitted to picking up a credit card in the name of Robert Voelkell at a post office. Voelkell had not applied for the card nor authorized anyone else to make such an application.[1] In addition, the district judge explained to Obasohan, "If I find that you were involved in other credit card frauds or misuse of credit cards as a result of the conspiracy charged in this case, I could take that into consideration in sentencing you."

Obasohan was sentenced to a term of 41 months imprisonment and ordered to pay the following restitution: $27,476.66 to Fidelity Investment Company; $2,000 to Discover Card Services; and $7,724.49 to U.S.A.A. Credit Card Services. The sentence included an eight level enhancement pursuant to U.S.S.G. § 2F1.1(b)(1)(I) based on the district court's adoption of $225,661 as the total loss.

II.

On appeal, Obasohan argues that the district court exceeded its authority by ordering him to pay restitution for losses resulting from any acts other than his attempts to obtain a

---

[1]Obasohan had been charged with committing this overt act "among others" in his indictment.

Discover credit card in Robert Voelkell's name. He contends that he was charged and convicted only of conspiracy to obtain the Voelkell card and suggests that, under *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), any restitution must be limited to losses resulting from that offense.

Obasohan did not object to the district court's restitution order at sentencing. Absent manifest injustice, we will not entertain a sentencing issue on appeal if a defendant has failed to raise an objection to the district court as long as the defendant had the opportunity to raise such an objection. *United States v. Jones,* 899 F.2d 1097, 1103 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill,* 984 F.2d 1136 (11th Cir.1993). In *United States v. Cobbs,* 967 F.2d 1555 (11th Cir.1992), we recognized the rule in *Jones* but noted that *Jones* "does not preclude review of an issue if there is plain error." *Id.* at 1557 (citing *United States v. Webb,* 943 F.2d 43 (11th Cir.1991)). In *Cobbs,* we concluded that

> if a court orders restitution beyond that authorized by the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663 and 3664 (formerly codified at 18 U.S.C. §§ 3579 and 3580), the resulting sentence is an illegal sentence subject to review as plain error. Therefore, if the district court imposed an illegal sentence in its restitution order by requiring restitution beyond that authorized by statute, Cobbs is entitled to relief notwithstanding his failure to object at sentencing.

*Cobbs,* 967 F.2d at 1558. Accordingly, in spite of Obasohan's failure to object at sentencing, we reach the merits of his claim.

*Hughey* involved a defendant who pleaded guilty to using one unauthorized credit card. The district court ordered Hughey to pay restitution under the Victim and Witness Protection Act of 1982

("VWPA") based upon the losses from the use of the credit card for which he was convicted as well as the use of twenty-one other credit cards, for which he was not convicted. The Supreme Court reversed the restitution order, holding that restitution under the VWPA may only be ordered based upon losses stemming from the offense of conviction. *Hughey,* 495 U.S. at 422, 110 S.Ct. at 1985-86; *Cobbs,* 967 F.2d at 1558-59 (interpreting *Hughey* ).

We need not consider the application of *Hughey* to a case such as Obasohan's, however, because a post-*Hughey* amendment to the VWPA makes clear that the restitution order in this case was authorized under the statute. Effective November 29, 1990, Congress amended 18 U.S.C. § 3663 to expand the definition of "victim" under the VWPA to include, in conspiracy cases, "any person directly harmed by the defendant's criminal conduct in the course of" the conspiracy. Pub.L. No. 101-647, 104 Stat. 4789, 4863 (codified at 18 U.S.C. § 3663(a)(2)). Other circuits to have applied this amendment have held that a defendant convicted of conspiracy can be required to pay restitution for all losses resulting from acts in furtherance of the conspiracy. *See United States v. Plumley,* 993 F.2d 1140, 1142 (4th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 279, 126 L.Ed.2d 230 (1993); *United States v. Sanga,* 967 F.2d 1332, 1334 (9th Cir.1992).[2]

---

[2]In a recent Eleventh Circuit case considering the issue of VWPA restitution in the context of a conspiracy, the court refused to apply the 1990 amendment because the defendants were sentenced prior to its effective date, and instead found *Hughey* to govern. *U.S. v. Elliott,* 62 F.3d 1304, 1313-14 (11th Cir.1995). In this case, in contrast, both the conduct constituting the basis for Obasohan's conspiracy conviction and Obasohan's sentencing occurred after the amendment became effective.

We agree and conclude that a district court does not exceed its authority by ordering a defendant to pay restitution for losses which result from acts done in furtherance of the conspiracy of which the defendant is convicted. In this case, the record demonstrates that the losses which formed the basis of the restitution award resulted from acts which were part of the conspiracy of which Obasohan was convicted.[3] We therefore AFFIRM the restitution award.

### III.

Obasohan raises three additional claims on appeal. He argues that the district court (1) erred in determining the loss attributable to his actions and improperly enhanced his sentence by eight levels; (2) erroneously denied him a sentence reduction for acceptance of responsibility; and (3) improperly enhanced his sentence for being involved with more than minimal planning or more than one victim and for reckless endangerment of police officers when he was arrested in January 1994. Our review of the record and the applicable law reveals that these claims also are without merit. Accordingly, we AFFIRM Obasohan's sentence.

-----

[3]The indictment charged Obasohan with a conspiracy extending "[f]rom on or about a time unknown to the Grand Jury, to on or about February 1, 1993, at Miami, Dade County, in the Southern District of Florida" and listed as overt acts Obasohan's receiving a Discover credit card in the name of Robert L. Voelkell, Jr., "among others." Prior to accepting Obasohan's guilty plea, the district judge advised him that he would be held responsible at sentencing if it turned out that he had been involved in other credit card fraud pursuant to the conspiracy. Evidence presented at Obasohan's sentencing hearing did, in fact, link him to a number of further acts of "true name" credit card fraud, including those resulting in the losses for which he was ordered to pay restitution. Clearly, then, Obasohan's indictment and conviction were not limited to the Voelkell incident.

AFFIRMED.