# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-4133

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Minnesota. |
| Edmond Xavier Ramirez, Sr., | * |
| | * |
| Defendant - Appellant. | * |

———————

Submitted:  June 15, 1999

Filed: November 2, 1999

———————

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and BYRNE,[*] District Judge.

———————

LOKEN, Circuit Judge.

In 1993, Edmond Xavier Ramirez solicited $1,540,000 from Minnesota investors to produce an electric car, deposited the funds in an escrow account in a Minnesota bank, and then transferred the monies out of trust to make extravagant personal purchases.  A jury convicted him of two counts of wire fraud in violation of 18 U.S.C. § 1343, and ten counts of engaging in monetary transactions in property derived from

———————

[*]The HONORABLE  WM. MATTHEW BYRNE, JR., United States District Judge for the Central District of California, sitting by designation.

that fraud in violation of 18 U.S.C. § 1957. In sentencing Ramirez to sixty-six months in prison and ordering him to pay restitution in the amount of $3,089,000, the district court took into account an additional $1,549,000 that different investors lost in other electric-car investments as early as 1975 and as late as 1997. Ramirez appeals his conviction and sentence, arguing the evidence was insufficient to convict, the other investment schemes were improperly included as relevant conduct for sentencing purposes, and the other investors were improperly included as restitution victims.[1] We affirm Ramirez's conviction, but we agree in large part with his sentencing arguments and therefore remand for resentencing.

## I. Sufficiency of the Evidence

The indictment alleged that Ramirez devised a fraudulent scheme to obtain monies from investors for a project to build an assembly plant in Willmar, Minnesota, for the "EXAR-1" electric car. Ramirez argues the evidence was insufficient because the government failed to prove fraudulent intent and lack of good faith. We review the evidence in the light most favorable to the jury's verdict and give the verdict the benefit of all reasonable inferences that might be drawn from the evidence. See United States v. Jackson, 155 F.3d 942, 946 (8th Cir.), cert. denied, 119 S. Ct. 627 (1998).

Ramirez told potential investors in the Willmar Project that he would put $1,500,000 in a fiduciary account prior to an initial public offering of stock in the corporation that would produce the electric cars. He deposited $1,540,000 of the

[1]Ramirez also argues that venue in the District of Minnesota was improper. He did not object to venue in the district court and therefore has waived this issue. See United States v. Cordova, 157 F.3d 587, 597 (8th Cir. 1998). In any event, venue was clearly proper. Ramirez defrauded investors in a Minnesota project, deposited their investments in a Minnesota bank account, and withdrew the funds in money laundering transactions. Thus, Minnesota was a "district in which [the] offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

money raised into an escrow account in a Minnesota bank and assured investors that two of them would have to co-sign for any significant withdrawals. He later wire transferred the escrowed funds to bank accounts in other States that were under his exclusive control, relying on authority conferred by undisclosed corporate resolutions, and immediately began using the transferred money for personal expenditures. The government also introduced evidence that Ramirez backed out of an earlier investment scheme in California because he lacked sufficient control over the investment funds. This evidence was sufficient to establish the elements of wire fraud – a scheme to defraud, use of interstate wires incident to the scheme, and intent to harm the investors. See United States v. Lefkowitz, 125 F.3d 608, 614 (8th Cir. 1997). As the district court noted at sentencing, Ramirez "diverted the funds, clear and simple theft."

## II. Amount of Fraud Loss for Sentencing

Under the Sentencing Guidelines, the base offense level for fraud is adjusted upward if the loss resulting from the fraud exceeded $2,000. See U.S.S.G. § 2F1.1(b). The Guidelines generally provide that specific offense characteristics, such as the calculation of fraud losses, are determined on the basis of "relevant conduct," not the acts underlying the offense of conviction. See U.S.S.G. § 1B1.3(a). Relevant conduct under the Guidelines includes, "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Multiple fraud offenses are grouped under § 3D1.2(d), so relevant conduct for purposes of sentencing Ramirez includes all fraudulent acts or omissions "that were part of the same course of conduct or common scheme or plan" as his offense of conviction, the Willmar Project fraud.

At the government's urging, Ramirez's Presentence Investigation Report (PSR) calculated the fraud loss for sentencing purposes as "at least $3,090,000," consisting of the $1,540,000 invested by Willmar Project investors, plus $1,550,000 in claims

filed by twenty other persons in the forfeiture portion of the criminal proceedings in the district court. To support this recommendation, the PSR listed each investor whose loss was included, separating the Willmar Project investors from the twenty forfeiture claimants. Ramirez's objections to the PSR included the following objection to the recommended offense level:

> The defendant objects to the inclusion of the loss as calculated in the [PSR]. He asserts the loss based on the claims filed under oath by other investors identified by the U.S. Attorney's Office should not be included as relevant conduct. The defendant objects to the loss calculation of $3,090,000 and references the $1,540,000 figure as charged in the Indictment.

At the start of the sentencing hearing, the district court announced that it "will adopt the guideline position outlined in the [PSR as to] relevant conduct . . . . Therefore, the total loss is $3,090,000." On appeal, Ramirez argues the court erred by including as relevant conduct the losses incurred by investors in other electric car projects. Ramirez contends the proper fraud loss is $1,540,000, the amount lost by Willmar Project investors, which would reduce the fraud-loss increase from thirteen to twelve offense levels. This in turn would reduce Ramirez's Guidelines sentencing range to 51-63 months, below his 66-month prison sentence.

Relevant conduct for fraud-loss purposes is a fact-intensive issue. See United States v. Morton, 957 F.2d 577, 579-80 (8th Cir. 1992); U.S.S.G. § 1B1.3 comment. n.9. The district court expressly based its finding of fraud loss on the loss findings in the PSR. This appears to be reversible error because, "[a]s we have repeatedly held, when the defendant makes a timely objection to the PSR, if the sentencing court chooses to make a finding with respect to the disputed facts, it must do so on the basis of evidence, and not the presentence report." United States v. Hudson, 129 F.3d 994, 995 (8th Cir. 1997) (quotation omitted).

The government counters by arguing that Ramirez's "vague and cryptic" objection did not allege any specific factual inaccuracies and therefore did not preclude the district court from adopting the PSR's proposed fraud loss as the court's finding of fact. We might agree that the objection failed to raise and preserve for appeal a challenge to the specific details of the various claims asserted against Ramirez's forfeited assets. But the objection clearly raised the fact-intensive issue of whether the forfeiture claims were based upon acts or omissions that were part of the same course of conduct or a common scheme or plan as Ramirez's offense of conviction, the Willmar Project fraud. Therefore, the objection required the government to prove those fundamental relevant conduct facts by evidence other than the PSR. The government introduced no such evidence at sentencing, and our review of the record reveals that evidence of prior electric car projects was strictly limited at trial and could not support the government's broad position on appeal that Ramirez engaged in a single, twenty-two-year course of criminal conduct.

The government further argues that Ramirez should be foreclosed from raising this issue on appeal because he did not comply with the local rule that parties must file sentencing position papers which "indicate . . . whether an evidentiary hearing is required to resolve any of the issues in dispute." D. MINN. R. 83.10(f). We disagree. The government bears the burden of proving relevant conduct by a preponderance of the evidence. When the defendant has objected to the PSR's relevant conduct recommendation, the PSR is not evidence, and the government must determine whether the facts it proved at trial are sufficient to support the relevant conduct finding that it will urge at sentencing. If not, the government must request an evidentiary hearing to fill this gap. Of course, the objecting defendant *may* request a hearing to introduce relevant conduct evidence, but nothing in the Guidelines or in our prior decisions precludes the defendant from simply objecting to the PSR's recommendation that a prior act is relevant conduct, thereby putting the government to its proof of that fact at sentencing. Therefore, we conclude the district court erred in basing its relevant conduct finding on the fraud-loss recommendation in the PSR.

-5-

The offense of conviction as defined in the indictment was the Willmar Project fraud. There is no evidence the twenty forfeiture claimants were involved in the Willmar Project. In determining whether uncharged fraudulent acts are relevant conduct, our sister circuits "look to the similarity, regularity, and temporal proximity of the uncharged acts to the offense of conviction." United States v. Sykes, 7 F.3d 1331, 1336 (7th Cir. 1993); see United States v. Mullins, 971 F.2d 1138, 1142-46 (4th Cir. 1992). One of the twenty claimants, an Illinois resident, filed a forfeiture claim for $1,000,000 based upon a 1980 loan to a different electric car company. There is no evidence this transaction was related to the offense of conviction in any significant way. Thus, it is not relevant conduct as a matter of law. Reducing the district court's fraud-loss finding of $3,090,000 by this $1,000,000 claim results in a total fraud loss of $2,090,000, which is in the same fraud loss category as the $1,540,000 fraud loss that Ramirez has conceded. See U.S.S.G. § 2F1.1(b)(1)(M) (for a loss of more than $1,500,000 but not more than $2,500,000, increase twelve levels). Accordingly, we direct the district court in resentencing Ramirez to apply § 2F1.1(b)(1)(M).

### III. The Restitution Issue

The Victim and Witness Protection Act provides that the district court in sentencing for a felony "may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A). Ramirez argues the restitution order must be reduced from $3,089,000 to $1,540,000 because the district court erred by awarding restitution to the twenty-one forfeiture claimants who were not Willmar Project investors.[2] Ramirez concedes he did not object to the restitution award at sentencing. Therefore, our proper standard of review is for "plain error resulting in a miscarriage of justice." Jackson, 155

---

[2]The PSR listed twenty forfeiture claimants totaling $1,550,000. In preparing its restitution order, the district court later determined that there were in fact twenty-one claims totaling $1,549,000.

F.3d at 949 (quotation omitted). But an order to pay restitution beyond that authorized by the statute is a plain error of law. See United States v. Trigg, 119 F.3d 493, 501 & n.7 (7th Cir. 1997); United States v. Obasohan, 73 F.3d 309, 311 (11th Cir. 1996).

In Hughey v. United States, 495 U.S. 411, 420 (1990), the Supreme Court held that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." Congress subsequently amended the statute to define a restitution "victim" to include, "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct *in the course of the scheme, conspiracy, or pattern*." 18 U.S.C. § 3663(a)(2) (emphasis added). The government argues that "the unchallenged record amply supports [Ramirez's] participation in a scheme which had a life span of at least 22 years."

Under the statute as amended, the district court had discretion to order restitution for all the victims of Ramirez's scheme to defraud, whether or not their transactions were specifically named in the indictment. However, we still must determine the contours of that scheme. In explaining a later amendment that made restitution mandatory for certain offenses, the Senate Judiciary Committee stated:

> The committee intends this provision to mean, except where a conviction is obtained by a plea bargain, that mandatory restitution provisions apply only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted.

S. REP. NO. 104-179, at 19 (1996), reprinted in 1996-4 U.S.C.C.A.N. 924, 932. Consistent with both the plain language of the statute and this indication of legislative intent, we "look to the scope of the indictment" to determine whether an award is "within the outer limits of a permissible restitution order." Jackson, 155 F.3d at 949,

950; see United States v. Manzer, 69 F.3d 222, 230 (8th Cir. 1995). Other circuits agree that the indictment defines the scope of the criminal scheme for restitution purposes. See United States v. Henoud, 81 F.3d 484, 488 (4th Cir. 1996), and cases cited.

In this case, the indictment was limited to the Willmar Project fraud and did not state, or even imply, that this fraud was part of a broader, ongoing scheme of any kind, much less one dating back to the mid-1970s. Ramirez was not charged with nor convicted of defrauding investors in other projects, and the fact that the government has allowed other investors to file claims against his forfeited assets in no way expands the universe of persons who may be awarded restitution under 18 U.S.C. § 3663(a). We conclude that restitution in this case must be limited to those victims who lost money investing in the Willmar Project. On remand, the district court is directed to reduce its restitution order accordingly.

For the foregoing reasons, we affirm Ramirez's conviction and remand to the district court for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-