# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 04-2723

—————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Ione E. Fogg, | * | |
| | * | |
| Appellant. | * | |

—————

Submitted: February 14, 2005
Filed: May 20, 2005

—————

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
Judges.

—————

BOWMAN, Circuit Judge.

Appellant Ione E. Fogg pleaded guilty to two counts of misdemeanor larceny after writing and cashing checks that she had stolen in blank form from her mother-in-law. She appeals from the sentencing and restitution orders imposed by the District Court. After reviewing the record, we affirm Fogg's sentence, and we vacate the order of restitution and remand for reconsideration of the amount of restitution ordered.

# I.

Fogg was indicted by a grand jury for felony larceny after cashing stolen checks at three locations on the Crow Creek Indian Reservation in South Dakota. A surveillance videotape showed Fogg writing and cashing checks at the Hunkpati Road Stop Texaco (Hunkpati) and the Lode Star Casino (Lode Star).[1] In addition, a witness was prepared to identify Fogg as having cashed stolen checks at Shelby's Convenience Store (Shelby's).

As mentioned previously, the stolen checks belonged to Fogg's mother-in-law, Ethel Miller, and they were drawn on Miller's checking account at Wells Fargo Bank (WFB). After Fogg was indicted, Miller died and Lode Star destroyed the videotapes from Lode Star and Hunkpati. As a result, the government allowed Fogg to plead guilty to a superseding information charging Fogg with two counts of misdemeanor larceny—one count for checks totaling $275.00 cashed at Shelby's and one count for checks totaling $189.00 cashed at Hunkpati. Fogg waived her appeal rights in her plea agreement, but she excepted from the appeal waiver the right to appeal any upward departures from the sentencing guidelines and to appeal the amount of restitution ordered.

At sentencing, the District Court reduced Fogg's base offense level by two levels for acceptance of responsibility. The District Court then imposed a two-level enhancement after finding that Miller had been a vulnerable victim. Determining that Fogg's criminal history score underrepresented her actual history of criminal activity, the District Court departed upward one criminal history category and two offense levels to reflect Fogg's true criminal history and likelihood of committing further offenses. These departures brought Fogg to an offense level of 8 and a criminal

---

[1]Apparently, Hunkpati was part of the Lode Star facility and the two shared a common surveillance system.

history category of VI, placing her within a sentencing range of 18–24 months. Because the statutory maximum sentence for each of the two misdemeanor larceny counts was twelve months, the District Court sentenced Fogg to twenty-four months, which reflected the maximum sentence for each of the two counts, running consecutively. In addition, the District Court entered an order requiring Fogg to pay $1,517.00 in total restitution to Shelby's, Miller's estate, and WFB. Fogg appeals, challenging her sentence and the amount of restitution ordered.

## II.

We must first decide which of Fogg's claims were waived by her plea agreement. Generally speaking, a defendant may waive her appeal rights in a valid plea agreement. United States v. Andis, 333 F.3d 886, 889 (8th Cir.), cert. denied, 540 U.S. 997 (2003). In her plea agreement, Fogg waived her appeal rights, but excepted from the waiver the right to appeal an "upward departure" from the guidelines range and "any finding regarding the amount of restitution." Plea Agreement ¶ 11. The vulnerable victim enhancement Fogg received was pursuant to § 3A1.1(b) of the guidelines and was an "adjustment" rather than an "upward departure." See U.S. Sentencing Guidelines Manual ch. 3, pt. A (2003) (discussing "adjustments"); cf. id. ch. 5, pt. K (discussing "departures"); see also United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992) ("The guidelines differentiate between departures and adjustments."). Thus, Fogg waived the right to appeal that enhancement. See United States v. Gaitan, 171 F.3d 222, 223–24 (5th Cir. 1999) (distinguishing an "adjustment" from a "departure" for purposes of an appeal waiver).

Fogg also claims the enhancement of her sentence based on judge-determined facts violated her Sixth Amendment right to a jury trial under Blakely v. Washington, 124 S. Ct. 2531 (2004). The Supreme Court's decision in United States v. Booker held that the reasoning of Blakely applied to the United States Sentencing Guidelines. See 125 S. Ct. 725, 746 (2005) (Stevens, J.). Unless expressly reserved, however, the

right to appellate relief under Booker is among the rights waived by a valid appeal waiver, even if the parties did not anticipate the Blakely/Booker rulings. See United States v. Killgo, 397 F.3d 628, 629 n.2 (8th Cir. 2005). Further, plea agreements are contractual in nature and are to be interpreted according to the parties' intentions, looking to what the parties reasonably understood to be the terms. See United States v. Borer, 394 F.3d 569, 577 (8th Cir. 2005); United States v. Alexander, 869 F.2d 91, 95 (2d Cir. 1989); United States v. Rubbo, 396 F.3d 1330, 1334 (11th Cir. 2005).

There is no indication that Fogg intended to except from her appeal waiver the right to appeal her sentence or the application of the guidelines on Sixth Amendment grounds. The fact that Fogg entered into her plea agreement before the Supreme Court's decision in Blakely underscores our interpretation of the agreement. The plea agreement reserved "the defendant's right to appeal an upward departure," Plea Agreement ¶ 11, and there is simply no evidence that the parties intended those words to have any meaning other than their usual and ordinary meaning prior to the Blakely/Booker decisions. See Rubbo, 396 F.3d at 1334. Thus, Fogg's plea agreement waived her right to assert a Blakely/Booker claim on appeal. Fogg's raising of Blakely at her sentencing hearing could not and did not vitiate the limitation on her right to appeal already agreed to as part of her plea agreement.[2] Consequently, we have no occasion to discuss the merits of Fogg's Blakely/Booker claims. By contrast, Fogg's waiver did reserve the right to appeal the upward departure based on the District Court's determination that Fogg's criminal history score failed to reflect the full extent of her criminality, as well as the right to appeal the amount of restitution ordered. We therefore turn to those claims.

---

[2]Fogg does not argue that the plea agreement is in any way invalid.

## A.

Fogg argues that the District Court erred by departing upward from her criminal history score and offense level under § 4A1.3 of the guidelines. We review de novo whether the sentence was imposed in violation of law or as the result of an incorrect application of the sentencing guidelines. See 18 U.S.C. § 3742(f)(1); United States v. Mashek, No. 04-2650, slip op. at 6–8 (8th Cir. May 10, 2005) (citing United States v. Mathijssen, No. 04-1995, slip op. at 3–4 (8th Cir. May 2, 2005)). We review for abuse of discretion the decision to depart upward from the guidelines, and we review the extent of the departure for reasonableness. Id. at 6 n.5 (citing United States v. Iron Cloud, 312 F.3d 379, 382 (8th Cir. 2002)); United States v. Sample, 213 F.3d 1029, 1032, 1034 (8th Cir. 2000).

The District Court made the departure pursuant to § 4A1.3 after determining that Fogg's prior criminal activity was not adequately reflected by her criminal history score. See U.S. Sentencing Guidelines Manual § 4A1.3(a)(1) (2003). The District Court also determined that Fogg's numerous convictions—for petty theft, insufficient-funds checks, driving under the influence, and driving without a license—indicated a high likelihood that Fogg would commit other crimes. See id. We note that these bases for departure run parallel to two of the sentencing factors set forth in 18 U.S.C. § 3553(a). See United States v.Yahnke, 395 F.3d 823, 825 (8th Cir. 2005) (finding that the bases for a departure under § 4A1.3(a) correspond with the sentencing factors listed in 18 U.S.C. §§ 3553(a)(1) and (a)(2)(C)). We therefore conclude these were permissible bases on which to make the upward departure.

After deciding a departure was warranted, the District Court exercised its discretion by departing upward to a criminal history category of VI and to an offense level of 8. This increased the applicable sentencing range of 9–15 months to a range of 18–24 months. The District Court then sentenced Fogg to the statutory maximum of twenty-four months for the two misdemeanor larceny convictions. Fogg could not

have been surprised by this sentence, because the District Court had informed her before she pleaded guilty that she might receive a two-year sentence. Plea Hr'g Tr. at 12. Given Fogg's extensive history of criminal activity, the District Court did not abuse its discretion by departing upward under § 4A1.3, and the extent of the departure was reasonable.

Based on the foregoing discussion, we conclude that, insofar as Fogg's appeal rights were not waived as part of her plea agreement (we do not consider any claims that were waived), Fogg's sentence was not imposed in violation of law or as the result of an incorrect application of the sentencing guidelines. Likewise, we conclude that the resulting final sentence of twenty-four months is reasonable. Treating the guidelines as advisory, as Booker requires, we are satisfied that Fogg's sentence is supported by the District Court's guidelines calculations and by the sentencing factors listed in § 3553(a). We therefore affirm the sentence imposed by the District Court.

**B.**

Regarding Fogg's challenge to the amount of restitution ordered, a threshold question is whether Fogg preserved this issue for appellate review. In her written objections to the Presentence Investigation Report (PSR), Fogg objected to restitution for any losses from the checks written to Lode Star because she had not admitted to cashing any of those checks. Defendant's Written Objections (DWO) #1–4 (objecting to PSR ¶¶ 8, 9, 11, and 12). She also objected that the PSR was "vague" as to the number of Lode Star checks that were returned for insufficient funds once Miller's account was depleted. Id. #5 (objecting to PSR ¶ 14). This objection implicitly questioned the portion of the deficit in Miller's account to be attributed to the Lode Star checks. See PSR ¶ 14; DWO # 5 (objecting to PSR ¶ 14); Addendum to PSR (Addendum) at 2 (stating Probation Officer's Response to DWO #5).

At sentencing, the District Court sustained Fogg's written objection to restitution for checks cashed at Lode Star as "not part of the offense of conviction" under 18 U.S.C. § 3663. Sentencing Tr. at 5, 19. The District Court then stated that Fogg's vagueness objection as to Miller's account information was "immaterial." Sentencing Tr. at 19. But this objection *was not* immaterial, because once the deficit in Miller's account was reduced by the amount attributed to the Lode Star checks, the restitution awarded to offset that reduced deficit would necessarily be reduced. Accordingly, at sentencing Fogg made a new objection to "the count" of $742.00 in restitution for Miller's estate, which was included for the first time in the Addendum. Sentencing Tr. at 24; see Addendum at 2 (stating Probation Officer's Response to DWO #5). Similarly, Fogg's objection to the restitution ordered for WFB was in response to the Addendum, which for the first time stated that WFB had lost $500.00 as a result of honoring five checks cashed at Lode Star.[3] Addendum at 2 (stating Probation Officer's Response to DWO #5). In making these objections to restitution for Miller's estate and WFB, Fogg's counsel twice referenced her initial Lode Star objection. Sentencing Tr. at 24.

The government argues that because the Addendum was released on June 22, 2004, and because Fogg did not make her objections to the Addendum until the sentencing hearing on June 28, 2004, Fogg's objections to the Addendum were untimely under Rule 32 of the Federal Rules of Criminal Procedure. We disagree. Rule 32 permits a court to "allow a party" to make a new objection at any time before sentencing if "good cause" is shown. Fed. R. Crim. P. 32(i)(1)(D). The inclusion of the losses to WFB and Miller's estate for the first time in the Addendum, as new

---

[3]Counsel for Fogg stated she had not previously objected to restitution for WFB in her written objections because WFB's losses had not been included in the initial PSR. Sentencing Tr. at 24. In addition, Fogg's counsel clearly stated she did not want to waive any objections to restitution that were not apparent prior to the Addendum. Id. Notably, no mention of restitution for WFB was made in the initial PSR.

information, constituted good cause for making the objections, and the objections were made before sentencing. After Fogg made these objections, the District Court stated without explanation that "if that's an objection, it's overruled," Sentencing Tr. at 25, which appears to have been a ruling on the merits. We therefore cannot say the objections were untimely.

In summary, the District Court sustained Fogg's objection to restitution for any losses from the Lode Star checks as not part of the charged offenses. Fogg also objected to the impact of the Lode Star checks on the restitution ordered for WFB and Miller's account. These latter objections implicitly and by reference objected to restitution for losses not resulting from the charged offenses, and the District Court rejected them on the merits. Therefore, we hold that Fogg preserved for appellate review the issue regarding the amount of her restitution order.[4]

---

[4]The point heading for the section of Fogg's brief that addresses the restitution issue simply states that "THE DISTRICT COURT ERRED IN DETERMINING FOGG'S RESTITUTION." Appellant's Br. at 17. In making her argument, Fogg reiterates that "the superseding information did not charge that Fogg had stolen money from [Lode Star]." Id. at 18. She argues that the District Court "*clearly* erred" in awarding restitution to WFB and Miller's estate. Id. at 19 (emphasis added). Fogg also cites United States v. Wise, 976 F.2d 393 (8th Cir. 1992), cert. denied, 507 U.S. 989 (1993), arguing that, given her sustained objection as to Lode Star, there was insufficient factual support for the restitution ordered to WFB and Miller's estate. See Appellant's Br. at 18–19. The government interprets this argument accordingly, and rebuts in part by arguing that losses suffered by victims not named in the information, i.e., losses from the Lode Star checks, could be compensated under 18 U.S.C. §§ 3663 and 3663A. Appellee's Br. at 16–18. And although Fogg argues later in her brief that the District Court "*plainly* erred" in awarding restitution based partially on the Lode Star checks, Appellant's Br. at 20 (emphasis added), throughout her argument she contends that she timely and properly made the relevant objections. Id. The record supports our holding that she preserved her right to appellate review of her restitution order for clear error, and Fogg's brief does not provide any persuasive reason to conclude that she intended to concede or did concede to only plain-error review of the amount of her restitution order.

Accordingly, we review the amount of the District Court's restitution order for clear error. United States v. Simon, 376 F.3d 806, 809 (2004). A sentencing court may order a defendant to make restitution under the Mandatory Victims Recovery Act. 18 U.S.C. § 3663(a)(1)(A) (2000); see United States v. Ramirez, 196 F.3d 895, 899 (8th Cir. 1999). Unless the charged offense has a scheme, conspiracy, or pattern of criminal activity as an element, however, the restitution order may only cover losses from the specific offense for which the defendant was indicted and convicted. Ramirez, 196 F.3d at 899–900. The offense of larceny does not have a scheme, conspiracy, or pattern of criminal activity as an element, see 18 U.S.C. § 661 (2000), and therefore the District Court was limited to ordering restitution for the amount of losses suffered by the victims of Fogg's larceny as charged in her superseding information.

Fogg was charged with misdemeanor larceny for stolen checks cashed at Shelby's and Hunkpati. The government dropped charges regarding checks cashed at Lode Star from Fogg's superseding information. Again, the District Court denied all restitution based on the Lode Star checks because those checks were not part of the convicted offenses. The factual-basis statement accompanying Fogg's plea agreement admitted a total loss of $464.00 from her offenses—$275.00 for checks cashed at Shelby's and $189.00 for checks cashed at Hunkpati. The government attested this factual-basis statement, thus signaling its agreement with Fogg's admissions as to the total amount of stolen checks admitted by her plea.

The District Court ordered restitution in the amount of $1,517.00, which corresponded to $275.00 for Shelby's, $500.00 for WFB, and $742.00 for Miller's estate.[5] In reviewing the record, there appears to be a problem with each of these

---

[5]The District Court denied restitution for Hunkpati in reliance on the PSR, which stated that Hunkpati had suffered no financial losses as a result of the stolen checks. See Sentencing Tr. at 24; PSR ¶ 14 ("[The Hunkpati manager] stated the checks cashed at [Hunkpati] were not returned as insufficient; therefore, [Miller]

amounts.  The $275.00 in restitution ordered for Shelby's was less than the $414.20 in total losses Shelby's suffered after penalty fees were assessed.[6]  PSR ¶ 15.  In addition, the $500.00 in restitution ordered for WFB was clearly compensation for checks cashed at Lode Star rather than Shelby's or Hunkpati.  See Letter from WFB dated June 8, 2004 (regarding check nos. 2980–84).  Finally, the $742.00 in restitution ordered for Miller's estate was for penalties on twelve insufficient-funds checks, but five of those twelve checks were cashed at Lode Star.  See id. (regarding check nos. 2985, 2987–90).  To summarize, not only was Shelby's under-compensated by the order, but it appears that none of the $500.00 ordered for WFB, and only an unknown portion of the $742.00 ordered for the Miller estate, arose from the charged offenses.  The amount of the restitution order was therefore clear error.

Even though the amount of restitution at issue in this case is relatively small, the calculation of that amount and the information supporting it are, at this point, both confusing and conflicting.  To wit, the PSR admits that "[i]t is unclear how much of the [total losses] Mrs. Miller personally lost, before her funds were depleted, and the amount of loss incurred by each business."  PSR ¶ 12.  Given the conflicting information in the record and the resulting confusion at the sentencing hearing, we must remand to ensure the restitution order covers only the losses from checks cashed at Shelby's and Hunkpati.

---

incurred the losses with those checks, not the store.").  As if to add to the confusion in this case, however, the Addendum conflicts with this PSR statement by maintaining that Hunkpati suffered a $189.00 loss.  See Addendum at 2 (stating that "the Hunkpati Road Stop incurred a loss of $189.00"); see also Letter from WFB dated June 8, 2004 (stating that check nos. 2993, 3020, and 3050, totaling $189.00, were returned to Hunkpati because of insufficient funds in Miller's account).

[6]Although the District Court overruled Fogg's objection to the inclusion of penalty fees in the restitution ordered for Shelby's, see Sentencing Tr. at 19–20, the court appears to have omitted those penalty fees from the restitution order.

## III.

For the reasons discussed herein, the sentence imposed by the District Court is affirmed, and the restitution order is vacated and the matter remanded with instructions to reconsider the amount of restitution to be made by Fogg and to enter a new order of restitution consistent with this opinion.

_____