# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2203

_____

United States of America,                    *
                                              *
    Plaintiff - Appellee,                 *
                                              *   Appeal from the United States
v.                                            *   District Court for the
                                              *   District of Minnesota.
David Earl Gregoire,                          *
                                              *
    Defendant - Appellant.                *

_____

Submitted:  December 14, 2010
Filed: March 30, 2011

_____

Before LOKEN, ARNOLD, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted David Earl Gregoire of one count of interstate transportation of stolen property and five counts of mail fraud in violation of 18 U.S.C. §§ 2314 and 1341.  The district court imposed a sentence of twenty-four months in prison, three years of supervised release, and $294,731.25 in restitution.  It also ordered forfeiture of $252,521.17.  Gregoire appeals, challenging the presence of third parties during a warrant search, the sufficiency of the evidence, the denial of a requested jury instruction, the fraud loss determination at sentencing, and the amount of restitution and forfeiture ordered.  We reverse in part the restitution and forfeiture orders and otherwise affirm.

# I. Suppression and Sufficiency Issues

Gregoire, a science teacher in Little Falls, Minnesota, also worked as a part-time contract employee of Reed's Family Outfitters ("Reed's"), a family-run sporting goods retailer with its main store in Walker, a second store in Baxter that closed in 2007, and a third store in Onamia that was being opened at the time of Gregoire's arrest. When Reed's management passed from father Jeff Arnold to son Adam Arnold in 2003, Gregoire continued to work on an as-needed basis in a number of different capacities. At trial, Adam Arnold testified that he trusted Gregoire to keep track of the hours he worked. Periodically, the two would "square up," with Arnold paying Gregoire for the hours they agreed he had worked, either in cash at a rate of $10-12 an hour, or by "bartering" Reed's merchandise. Arnold testified that he had no record of the hours Gregoire worked, which varied widely, and no record of the merchandise that was bartered. No IRS W-2 forms were filed after 2000. Arnold testified that Reed's employees received twenty-percent employee discounts on most merchandise they purchased, and had been given "really crazy deals" on merchandise at an employee recognition event after the Baxter store was profitably sold in 2007.

In April 2008, a fishing tackle manufacturer's representative warned Adam Arnold that what appeared to be a large number of high-end products from Reed's were being sold on eBay at very low prices by "mrlatebid." Arnold investigated and found that "mrlatebid" was an account apparently located in Minnesota that regularly sold items also sold at Reed's stores with no minimum bid, often below the manufacturer's minimum advertised price and even below wholesale cost. Using friends and acquaintances as anonymous buyers, Arnold purchased two items from "mrlatebid." The return-address label on the packages listed Gregoire's name and home address. One item was a Nikon Rangefinder whose serial number was in the sequence of Nikon Rangefinders then stocked in Reed's warehouse. Arnold brought this information to the attention of local police.

Police investigators learned that Gregoire registered the user name "mrlatebid" in 2001 and had received over $140,000 from eBay sales of types of sporting goods also sold by Reed's. Little Falls police obtained a warrant to search Gregoire's home for items "mrlatebid" was listing for sale, for "other sporting goods that are still in the original packaging," and for financial records and computers. In the home, police found a huge quantity of sporting goods in multiple locations, some in original Reed's packaging, some outside empty boxes, and some used items. Adam Arnold and his brother offered their assistance, and the officers allowed them to enter the home and identify products from Reed's. A few of these items were not in store packaging, such as promotional and novelty displays and high-end scopes mounted on rifles that Gregoire owned. Police seized 277 items identified as Reed's merchandise, and Gregoire's laptop computer. A subsequent warrant search of Gregoire's mother's home, again with Arnold assistance, resulted in the seizure of over 1000 items identified as having come from Reed's.

While his home was being searched, Gregoire was interviewed at the Little Falls police station. After being advised of his <u>Miranda</u> rights, he admitted taking merchandise from Reed's and selling it on eBay without the Arnolds' awareness or permission. Gregoire's laptop was eventually turned over to the United States Postal Service and searched without another warrant in May 2009, resulting in seizure of additional financial records of eBay transactions. Gregoire was indicted in September 2009. Count 1 charged him with stealing merchandise from Reed's and knowingly transferring it in interstate commerce. Counts 2 through 6 charged him with a scheme to defraud from August 2005 to June 2008 in which he knowingly took merchandise without Reed's knowledge or consent and offered it for sale over eBay. Each of these counts named a different transaction as part of the scheme to defraud. The indictment further sought forfeiture of any property "which constitutes or is derived from proceeds traceable to" these violations, or substitute property if "the above-described property is unavailable for forfeiture."

At trial, six witnesses, including one out-of-state purchaser, testified they had purchased products from "mrlatebid" at prices significantly less than normal retail prices. Adam Arnold testified at length, explaining Reed's employment relationship with Gregoire, admitting he was sometimes paid in product, but denying knowing of or approving Gregoire's cut-rate eBay sales and insisting Gregoire did not work anywhere near the number of hours that would justify "bartering" the quantity of Reed's merchandise sold over eBay and found in the homes of Gregoire and his mother. Other government witnesses described the eBay auction process, the warrant searches of the homes, the Postal Service search of the laptop, and Gregoire's bank account records. The jury convicted him of all six counts. Facts relating solely to sentencing and forfeiture issues will be summarized in Part III of this opinion.

**A. Search Issues**. Gregoire appeals the district court's denial of his motion to suppress evidence seized during the search of his home and the subsequent search of his computer and evidence derived from these alleged Fourth Amendment violations. We review the district court's factual findings for clear error and its conclusions of law *de novo*. United States v. Clay, 618 F.3d 946, 956 (8th Cir. 2010), cert. denied, 2011 WL 196304 (2011) (standard of review).

Gregoire first argues that having the Arnolds present during the search of his home violated his Fourth Amendment rights. The district court concluded that the Arnolds' presence was not impermissibly beyond the scope of the warrant. We agree.

In Wilson v. Layne, 526 U.S. 603, 611-12 (1999), the Supreme Court noted: "Where the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by this Court and our common-law tradition." That is precisely what happened in this case. Citing no supporting authority, Gregoire argues the principle should not apply because the Arnolds' presence was not needed to identify the specific items named in the warrant. But this is not a constitutional

prerequisite. When the police entered Gregoire's home to execute the warrant, they discovered a massive cache of items that appeared to fall within the universe of the suspected thefts. It was objectively reasonable for the officers to turn to the Arnolds, owners and managers of Reed's, a theft victim, for help in confirming which items there was probable cause to believe had been stolen. "The general touchstone of reasonableness which governs Fourth Amendment analysis . . . governs the method of execution of the warrant." United States v. Ramirez, 523 U.S. 65, 71 (1998). The execution of the warrant to search Gregoire's home was constitutionally reasonable.[1]

Gregoire further argues that the government impermissibly seized items not in their original packaging and therefore not specifically named in the warrant. The district court concluded that the few items not specifically named were in plain view of officers properly executing the warrant, and their incriminating nature was immediately apparent. Gregoire argues that, even if these items were in plain view, their incriminating nature was not immediately apparent without improper help from the Arnolds. However, as we have explained, the Arnolds' presence did not violate the Fourth Amendment. Therefore, we agree with the district court that the Arnolds' identification of these items as having come from Reed's provided the officers with "probable cause to associate the property with criminal activity," justifying their seizure. United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990) (quotation omitted), cert. denied, 498 U.S. 1068 (1991); see Horton v. California, 496 U.S. 128, 135-42 (1990). A third party's identification of property alleged to be stolen and the officer's inspection of the property "satisfied the need for the object's incriminating character to be immediately apparent." PPS, Inc. v. Faulkner County, 630 F.3d 1098, 1105 (8th Cir. 2011).

---

[1]We further agree with Magistrate Judge Raymond Erickson that, even if the presence of the Arnolds violated the Fourth Amendment as construed in Wilson v. Layne, this would not require suppression of the evidence seized. See United States v. Hendrixson, 234 F.3d 494, 496-97 (11th Cir. 2000).

Gregoire next argues that the warrantless search of his laptop, and the one-year delay from its seizure to the subsequent search, violated his Fourth Amendment rights. The warrant authorized the seizure of "financial records . . . and all computers on the property." The district court concluded: "A search warrant which specifically authorized the seizure of a computer and a search for financial records clearly contemplates at least a limited search of the computer's contents" without the need of a second warrant. We agree. Searching the computer for records related to eBay sales was contemplated and therefore permitted by the warrant. Accord United States v. Upham, 168 F.3d 532, 536-37 (1st Cir. 1999); see United States v. Thorn, 375 F.3d 679, 685 (8th Cir. 2004), vacated on other grounds, 543 U.S. 1112 (2005).[2] Gregoire's contention that the delay in searching the laptop was unreasonable, requiring suppression of evidence obtained by the search, is without merit. See United States v. Brewer, 588 F.3d 1165, 1173 (8th Cir. 2009). To the extent he complains of interference with his possessory interest in the laptop, Rule 41(g) of the Federal Rules of Criminal Procedure provided a remedy he did not invoke.

**B. Sufficiency of the Evidence.** Gregoire argues the district court erred in denying his post-trial motion for judgment of acquittal on all counts because, given Adam Arnold's admission that he compensated employee Gregoire by "bartering" an unknown quantity of Reed's merchandise that he could not identify, the government failed to prove that the five specific items named in counts 2-6, or any other property, were stolen from Reed's. We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the jury's verdict, and reversing only if no reasonable jury could have found the defendant guilty. See, e.g., United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010).

---

[2]In December 2009, Fed. R. Crim. P. 41(e)(2)(B) was amended to provide that, unless otherwise specified, a warrant authorizing seizure of electronic storage media "authorizes a later review of the media for information consistent with the warrant."

Here, we need look no further than the taped interview of Gregoire the government introduced at trial. Counts 2-6 of the Indictment alleged that, "It was part of the scheme and artifice to defraud that . . . Gregoire, without the consent or knowledge of Reed's or its owners, took merchandise from Reed's and offered it for sale over the internet website, eBay." In the taped interview, Gregoire admitted the Arnolds were not "aware" he was taking merchandise from Reed's. Though he claimed he was paid for his work with products, he admitted Reed's did not "know anything about" the majority of what he took from its warehouse, admitted Reed's was not aware that he sold any of its merchandise on eBay, and admitted he decided what to take by whether it would sell. Moreover, there was overwhelming evidence that Gregoire stole the majority of the products he took from Reed's (such as testimony that the Rangefinder purchased from "mrlatebid" came from the back of a warehouse shelf, evidencing an intent to conceal its removal). Accordingly, the trial evidence was more than sufficient to support the jury's verdict that Gregoire was guilty of interstate transportation of stolen property and of executing the alleged scheme and artifice to defraud by knowing use of the United States mail and an interstate commercial carrier.

## II. The Jury Instruction Issue

An element of the crime of interstate transportation of stolen goods is that the defendant transported property "knowing the same to have been stolen, converted or taken by fraud." 18 U.S.C. § 2314. At trial, Gregoire timely requested a jury instruction that property has been "stolen" for purposes of this offense "when it has been taken without claim of right," language taken from the definition of criminal theft in the Minnesota Criminal Code. See Minn. Stat. § 609.52, subd. 2(1). The government objected, arguing the trial evidence did not support the defense of a claim of right. Without ruling on that contention, the district court denied Gregoire's request and instead used Eighth Circuit Model Criminal Jury Instruction 6.18.2314

because it is a "time-worn instruction of interstate transportation of stolen property." The instruction omitted any reference to "claim of right."

On appeal, Gregoire argues that the district court abused its discretion because denying his requested claim-of-right instruction deprived him of his primary theory of defense -- that he earned the merchandise he took from Reed's by working. The issue affects only his conviction on count 1, not the fraud counts. We review the denial of a requested instruction for abuse of discretion, determining "whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." United States v. Gianakos, 415 F.3d 912, 920 (8th Cir.) (quotation omitted), cert. denied, 546 U.S. 1045 (2005).

"It is well-established that defendants are entitled to a theory of defense instruction if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law." United States v. Casperson, 773 F.2d 216, 223 (8th Cir. 1985). A defendant is entitled to an instruction on his theory of defense even if its evidentiary basis is "weak, inconsistent, or of doubtful credibility," but failure to give the instruction may be harmless error. United States v. Evans, 272 F.3d 1069, 1085 (8th Cir. 2001), cert. denied, 539 U.S. 916 (2003).

In United States v. Turley, 352 U.S. 407, 411 (1957), the Supreme Court held that the meaning of "stolen" in 18 U.S.C. § 2312 (relating to interstate transportation of stolen vehicles) was not dependent on state law, and that "stolen" "has no accepted common-law meaning." Therefore, the Court gave "stolen" a broad meaning "consistent with the [statutory] context in which it appears." Id. at 413. Applying this principle, we cannot accept the district court's categorical rejection of the requested claim-of-right instruction, which is grounded in the law of the State from which Gregoire's federal offense occurred. For example, if a defendant is charged with violating § 2312 or § 2314 by transporting property the government claims was stolen,

but he claims was validly seized for foreclosure, the claim-of-right issue might be a legitimate theory of defense requiring an instruction other than Model Instruction 6.18.2314.

Gregoire invokes this reasoning by arguing that he lawfully possessed Reed's merchandise through a work-for-product arrangement with Adam Arnold. Though there was evidence the arrangement existed, the argument overlooks his admissions that most of the product was not acquired in this manner and that he had no permission to resell any Reed's merchandise on eBay. Given these admissions, we agree the government correctly argued that the evidence at trial did not support the purported claim-of-right defense. Therefore, the district court did not abuse its discretion in declining to give the requested instruction and in giving a well-accepted model instruction that fairly and adequately submitted count 1 to the jury. Moreover, given the overwhelming evidence that Gregoire transported in interstate commerce more than $5,000 worth of Reed's merchandise for which he had no claim of right, we agree with the government that any instruction error as to count 1 was harmless.

### III. Sentencing and Forfeiture Issues

**A. Calculation of Fraud Loss.** The advisory guidelines provide that the base offense level for a stolen property or fraud offense shall be increased if the loss attributable to the offense exceeds $5,000. See U.S.S.G § 2B1.1(b)(1). Gregoire's Presentence Investigation Report (PSR) recommended a 12-level increase because the loss attributable to his offense conduct was more than $200,000 but not more than $400,000. § 2B1.1(b)(1)(G). To arrive at this range, the PSR added the reported retail value of the items seized at Gregoire's home (other than firearms which were not stolen), $111,168.37, plus the reported retail value of the items seized at his mother's home, $75,300.48, plus his "actual profits from the sale of Reed's property on eBay" between August 2005 and June 2008, $116,854.02, plus his profits from eBay sales from March 2003 to August 2005, $42,210.08. Gregoire timely objected and

submitted a sentencing memorandum arguing (i) that pre-indictment eBay sales were not relevant conduct, and (ii) that "the amount of loss . . . should be limited to the $5,000-$10,000 actually proven at trial."

At sentencing, the government introduced no additional evidence relating to this issue and argued that its proof at trial supported the PSR recommendation. The district court agreed. Acknowledging that "the evidence at trial showed incredibly sloppy inventory practices, bookkeeping, many situations in which payment was made in kind and for services," the district court nonetheless found that "there is a loss amount here that clearly was above $200,000 that is appropriate to be counted for purposes of the 12-level enhancement. . . . There's just no way that all of those materials and gear and equipment in boxes from the suppliers and unused by the caseful weren't taken, and I do find that you did take items and I find that you knew those weren't yours and you knew they didn't belong to you."

On appeal, Gregoire argues the district court committed procedural error by enhancing his offense level based upon an inaccurate calculation of the amount of loss. As it is undisputed that he received merchandise in payment for substantial work at Reed's, he contends that the government failed to prove at trial the amount of merchandise that was instead stolen. We review the court's loss finding for clear error. United States v. Erhart, 415 F.3d 965, 970 (8th Cir. 2005), cert. denied, 546 U.S. 1156 (2006). Because "the damage wrought by fraud is sometimes difficult to calculate . . . . the district court need only make a reasonable estimate of loss rather than a precise determination." United States v. Agboola, 417 F.3d 860, 870 (8th Cir. 2005).

Gregoire's contention fails to take into account the nature of his fraud offense. He did not simply steal merchandise from Reed's. The essence of the fraud were his secret, unauthorized sales of merchandise obtained from Reed's. "Mrlatebid's" eBay sales were in direct competetion with Reed's. Every sale of merchandise stolen from

Reed's was a lost sale of that item for Reed's. Every sale at a cut-rate price of Reed's merchandise that Gregoire obtained by barter may have deprived Reed's of the sale, and at a minimum injured Reed's by undercutting the market price. For offenses such as fraud, relevant conduct for purposes of calculating loss includes all fraudulent acts "that were part of the same course of conduct or common scheme." United States v. Ramirez, 196 F.3d 895, 897 (8th Cir. 1999), quoting U.S.S.G. § 1B1.3(a)(2). Therefore, the district court properly included Gregoire's entire gross revenues from eBay sales from March 2003 to June 2008, a total of $159,064.10. Indeed, this amount understated the loss because the loss to Reed's was not what Gregoire received for his sales at cut-rate prices, but what Reed's would have received for the same retail sales. See United States v. Lively, 20 F.3d 193, 202-03 (6th Cir. 1994). However, the government introduced no evidence of the true loss, and Gregoire's gross revenues were a reasonable approximation.

Under this guideline, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). Given the overwhelming evidence at trial that Gregoire intended to sell most of what was seized at his home and his mother's home, it was proper to include as part of the fraud loss the value of most or all of what was seized, whether it was acquired by barter or by theft. In these circumstances, the district court's determination of fraud loss -- in other words, the magnitude of the fraud offense -- was not clearly erroneous. There was no procedural error.

**B. Forfeiture.** When a person is charged with a federal offense "for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment." The United States is authorized to seek civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the offenses specified in 18 U.S.C. § 981(a)(1)(C), which include mail fraud and interstate transportation of stolen property. See 18 U.S.C. §§ 1956(c)(7)(A), 1961(1); United States v. Jennings, 487 F.3d 564, 585 (8th Cir. 2007). With an exception not relevant here, the procedures set

forth in 21 U.S.C. § 853 "apply to all stages of a criminal forfeiture proceeding." 28 U.S.C. § 2461(c). Therefore, forfeiture of "substitute property" is authorized in the circumstances described in 21 U.S.C. § 853(p).

Citing the foregoing statutes, the indictment in this case alleged that, as a result of the offenses alleged in counts 1 through 6, "the defendant shall forfeit . . . any property, real or personal, which constitutes or is derived from the proceeds traceable to the violations . . . . If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in [21 U.S.C. § 853(p)]."

Rule 32.2(b)(5)(A) of the Federal Rules of Criminal Procedure provides that, "[i]n any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." At the end of Gregoire's trial, the prosecutor advised that the government intended to pursue a money judgment, not the forfeiture of specific property, and thus there was no forfeiture issue for the jury. Defense counsel responded with a motion to dismiss the forfeiture count, which the district court took under advisement.

After the jury verdict, but before sentencing, the government moved for a Preliminary Order of Forfeiture in the amount of $252,521.17, an amount determined by adding the proceeds from Gregoire's eBay sales during the period alleged in the indictment, $116,355.02, and the "retail cost" of the items seized in the two warrant searches as "verified" by Reed's employees. The day after the sentencing hearing, the district court overruled Gregoire's timely objection and entered the Preliminary Order requested. Then, expressly reciting that the Preliminary Order was now final, the court's final judgment provided that "the defendant shall forfeit his interest in $252,521.17 as stated in that Order." See Fed. R. Cr. P. 32.2(b)(4)(B).

-12-

On appeal, Gregoire first argues that the district court erred by failing to follow the requirement in Rule 32.2(b)(5)(A) that "the court must determine" whether either party requests that the jury be retained to determine forfeitability. However, we agree with the government and the district court that this Rule by its plain language applies only to "the forfeitability of specific property." See United States v. Tedder, 403 F.3d 836, 841 (7th Cir.) ("Rule 32.2 does not entitle the accused to a jury's decision on the amount of the forfeiture."), cert. denied, 546 U.S. 1075 (2005). As the government disclaimed any intent to seek forfeiture of specific property, there was no issue for the jury. Rather, the district court erred in not promptly granting defense counsel's motion to dismiss with prejudice this part of the indictment's forfeiture allegations, an issue the significance of which we will soon explain.

Gregoire further argues that the district court lacked an adequate basis for the amount of the forfeiture money judgment. We disagree with part of this contention. The statute authorized and the indictment alleged the forfeiture of property "derived from proceeds traceable to" the violations. The gross revenues from Gregoire's eBay sales during the period alleged in the indictment were direct proceeds of his mail fraud offense of conviction. As Gregoire introduced no evidence that he incurred any direct costs in acquiring these proceeds, forfeiture of the full amount, $116,355.02, must be affirmed. See 18 U.S.C. § 981(a)(2)(B).

However, we agree with Gregoire that the remainder of the forfeiture judgment must be reversed because a money judgment for the value of the property seized during the warrant searches was not authorized by either the statute or the indictment. This money was not "proceeds" of Gregoire's offenses -- the seized property was not sold, so it generated no proceeds. Nor can this portion of the money judgment be sustained as a forfeiture of "specific property" -- to avoid submitting forfeiture issues to the jury, the government abandoned this claim of forfeiture in the indictment, so it must be dismissed with prejudice. That leaves only the claim for forfeiture of "substitute property" as authorized by 21 U.S.C. § 853(p). But that statute provides

-13-

for forfeiture of substitute property only when acts *of the defendant* have caused property which constitutes or is derived from proceeds traceable to the offense of conviction to be unavailable, substantially diminished in value, or commingled. Here, there is no evidence that the seized property was unavailable. Indeed, there was testimony at trial that it remains in the possession of the United States. And if it was unavailable, that was clearly due to actions of the United States, not Gregoire. In these circumstances, $136,166.15 of the forfeiture judgment must be reversed.

**C. Restitution.** The Mandatory Victims Restitution Act (MVRA) provides that the district court "shall order" that a defendant convicted of mail fraud "make restitution to the victim of the offense," defined as "any person directly harmed by the defendant's criminal conduct." 18 U.S.C. §§ 3663A(a)(1), (a)(2), (c)(1)(A)(ii). The government bears the burden of proving by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of the offense." United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001), quoting 18 U.S.C. § 3664(e). "[R]estitution may be ordered for criminal conduct that is part of a broad scheme to defraud, without regard to whether the defendant is convicted for each fraudulent act in the scheme." United States v. Farrington, 499 F.3d 854, 861 (8th Cir. 2007) (quotation omitted), cert. denied, 552 U.S. 1213 (2008).

Gregoire's PSR reported that restitution was required but, "Information regarding restitution is pending receipt of the victim impact statement." Prior to sentencing, Gregoire submitted an affidavit stating the hours he worked for Reed's, supported by personal calendars for the years 1998-2008, and argued that the value of those services, for which he was mostly paid in merchandise, totaled $224,548. At sentencing, without submitting additional evidence or a victim impact statement from Reed's, the government argued that the trial evidence proved that Gregoire should be ordered to pay $294,731.25 in restitution -- the government's calculation of the proceeds of eBay sales from March 2003 to June 2008, plus the reported retail value of all items seized at his home and at his mother's home, *all* of which, the government

claimed with no further supporting evidence, was stolen from Reed's. Referencing a determination by the probation officer that is not part of the sentencing record, the district court accepted the government's position and ordered Gregoire to pay $294,731.25 in restitution. We review the district court's decision to order restitution for abuse of discretion and its underlying fact determinations for clear error. Farrington, 499 U.S. at 860.

In this case, Reed's was clearly a victim of Gregoire's fraud and theft offenses so the decision to order restitution was not an abuse of discretion. Indeed, it was mandated by statute. Likewise, a substantial portion of the restitution order was unquestionably sound. As we have explained, Gregoire's fraudulent eBay sales directly harmed Reed's, indeed, to an unproven extent by an amount greater than Gregoire's revenues from those sales. Therefore, the award of restitution in the amount of $159,064.10 must be affirmed.[3]

The remainder of the restitution order -- the alleged retail values of the items seized during the warrant searches of the two homes -- stands on less solid ground. At trial, Adam Arnold admitted that he periodically "bartered" an unrecorded quantity of Reed's merchandise to pay for Gregoire's unrecorded work time. Arnold's testimony tended to minimize these payments and to maximize the estimated amount of merchandise Gregoire stole, as one would expect because off-the-record employee payments could expose Reed's to federal income and FICA tax liabilities, which Arnold admitted understanding. On the other hand, prior to sentencing, Gregoire

---

[3]The statute limits restitution to "losses caused by the conduct underlying the offense of conviction." Hughey v. United States, 495 U.S. 411, 416 (1990); 18 U.S.C. § 3663A(a)(1). For an offense such as mail fraud "that involves as an element a scheme," restitution may include losses directly caused by "the defendant's criminal conduct in the course of the scheme" alleged in the indictment. § 3663A(a)(2); see Ramirez, 196 F.3d at 900. Thus, the district court did not abuse its discretion by including the $42,210.08 in eBay sales proceeds derived from the alleged scheme to defraud prior to the period set forth in the indictment.

submitted evidence that he had worked a vastly greater number of hours for which he was entitled to be paid in merchandise. That claim was material to the restitution issue in two respects: (i) items "bartered" to Gregoire were not stolen and, as they were not sold, did not increase Reed's actual loss; and (ii) the value of a defendant's services reduces the victim's actual loss and must be deducted from the restitution award. United States v. Allen, 529 F.3d 390, 396 (7th Cir. 2008). One would expect Gregoire's claim to be exaggerated, given the circumstances, but the government made *no* effort to cross-examine or refute it at sentencing. Despite this failure of proof on a critical issue of disputed material fact, the district court awarded restitution in the full amount requested by the government "without making a finding, which I am unwilling to make, that everything he took and that there wasn't payment in kind." This portion of the restitution award, $135,667.15, must be reversed for failure of proof.

There is an additional problem with this portion of the restitution award that leads us to remand for further proceedings. Though restitution may include the retail value of unsold stolen property *if it cannot be returned*, United States v. Robertson, 493 F.3d 1322, 1333 (11th Cir. 2007), cert. denied, 552 U.S. 1212 (2008), the testimony at trial was that the U.S. Postal Service was then in possession of the property seized at the two homes. At sentencing, the government introduced no evidence as to the property's current whereabouts, or whether it can be returned to Reed's. As the criminal proceedings are completed and the government's forfeiture claim dismissed with prejudice, the government has a duty to return the property to its rightful owner. United States v. Bein, 214 F.3d 408, 411 (3d Cir. 2000), cert. denied, 534 U.S. 943 (2001).

That the government may return property to a restitution victim normally does not delay immediate entry of a restitution order. United States v. McCracken, 487 F.3d 1125, 1129 (8th Cir. 2007). However, in this case, we conclude that the return-of-property issues and this portion of the government's restitution claim should have

-16-

been resolved at the same time.  Compare United States v. Ruff, 420 F.3d 772, 774-76 (8th Cir. 2005).  Accordingly, we remand for further restitution proceedings and direct the U.S. Attorney's Office to file with the district court, within sixty days of the issuance of our mandate, an accounting showing the disposition of each item of property that was seized during the warrant searches and subsequently turned over to the United States.  After giving the parties an opportunity to present additional evidence and argument, the district court will then determine (i) what items the government proved were stolen from Reed's, which will form the basis for an additional order of restitution, taking into account the reduction in Reed's actual loss resulting from any items returned to Reed's by the government; and (ii) what items were "bartered" by Reed's to Gregoire in payment for his services, or which were otherwise not stolen, items which should then be returned to Gregoire if that has not already occurred.

## IV.  Conclusion

For the foregoing reasons, we reverse in part the forfeiture order and direct entry of a forfeiture judgment in the amount of $116,854.02.  We reverse in part the restitution order and remand for further proceedings not inconsistent with this opinion. In all other respects, the conviction and sentence are affirmed.

_____